UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                                    Case No. 6:17-cr-15-Orl-37LRH

JARVIS WAYNE MADISON

### ORDER

On referral, U.S. Magistrate Judge Leslie R. Hoffman recommends the Court find Defendant's competency has been restored. (Doc. 667 ("**R&R**"); *see also* Doc. 486.) Defendant objects to the R&R (Doc. 682 ("**Objections**")) and the Government responded (Doc. 697). On review, the Objections are overruled.

### I.   BACKGROUND

This capital case spans back to January 2017. (*See* Docs. 17, 141.) Over the last four years, Defendant's competency has been heavily litigated. (*See* Docs. 189, 225, 417, 444, 457.) In August 2017, after Defense counsel first raised competency as an issue, Defendant was committed to the custody of the Attorney General to determine competency. (Docs. 68, 76.) After delays from hurricanes, he was transported to the Federal Detention Center in Miami, Florida, where Dr. Rodolfo Buigas evaluated him and opined he was competent. (Doc. 189, pp. 1–2.) After an evidentiary hearing, in January 2018, Magistrate Judge Karla Spaulding recommended finding Defendant competent. (Doc. 189.) This Court adopted Judge Spaulding's recommendation, over Defendant's objections. (Doc. 225.)

In July 2018, Defense counsel again moved for a competency determination, which the Court granted. (Docs. 339, 348.) Defendant was transferred to the Federal Correctional Institution in Butner, North Carolina. (Doc. 417, pp. 1–2.) He was evaluated by Dr. Justin Rigsbee, who opined he was competent to stand trial. (*Id.* at 2, 6.) But on his way back to the Middle District of Florida, Defendant suffered a medical event—likely a mini stroke. (*Id.* at 2, 7–9.) On arrival, he was examined by two additional experts and, per the Government's request, a court-appointed expert—Dr. Jason Demery. (*Id.* at 8; Docs. 414, 428, 444.) They all agreed Defendant was not competent post mini-stroke. (Doc. 444, p. 2.) So Judge Spaulding recommended the Court find Defendant not competent to stand trial and this Court adopted that recommendation. (Docs. 417, 444, 457.) Defendant was committed to the custody of the Attorney General to determine whether he could attain capacity in the foreseeable future. (Doc. 457.)

Defendant returned to Butner, this time to the Federal Medical Center ("**FMC Butner**"). (*See* Doc. 464.) He remained there from February 2019 to March 2020, largely due to his uncontrolled hypertension and time awaiting clearance for cardiovascular surgery. (*See* Docs. 464, 467, 471, 476.) In March 2020, FMC Butner issued a report finding Defendant's competency had been restored. (*See* Doc. 486.) Defendant was returned to the Middle District of Florida and the issue of competency was referred to Judge Hoffman. (*See id.*) She held an evidentiary hearing over three days. (*See* Docs. 626, 629, 631, 638, 646, 648.)

### A. Government's Experts

Drs. Kristina P. Lloyd, Tracy O'Connor Pennuto, and Patricia A. Zapf testified for

the Government and were admitted as experts without objection. (*See* Doc. 638, pp. 24:9–15, 239:13–23; Doc. 646, p. 75:12–17.)

Dr. Lloyd is a forensic psychologist working at FMC Butner. (Doc. 633-2, p. 1.) She conducted multiple interviews with Defendant, observed him over the year he was at FMC Butner, and evaluated him. (Doc. 633-1, p. 5; Doc. 638, pp. 43:22–44:6, 52:13–53:8.) She administered the Evaluation of Competency to Stand Trial – Revised ("**ECST-R**") to Defendant on March 2, 2020. (Doc. 633-1, p. 38.) The ECST-R assesses a defendant's factual and rational understanding of court proceedings and ability to consult with counsel. (*Id.*) Defendant tested in the normal range. (*Id.*) Dr. Lloyd opined Defendant "does not currently suffer from a mental disease or defect that would preclude him from proceeding to trial." (*Id.* at 40.)

Dr. Pennuto is a neuropsychologist working at FMC Butner. (Doc. 633-3, p. 1.) She assessed Defendant over three sessions. (Doc. 633-1, p. 30; Doc. 638, p. 32:9–11.) She administered multiple neuropsychological evaluations that "revealed generally intact performances across cognitive domains." (Doc. 633-1, p. 35.) Defendant performed low average or better on tests of executive functioning, learning and memory, language, and visuospatial/construction skills. (*Id.* at 35–36.) He showed mild weakness on more complex oral comprehension, but Dr. Pennuto found this a result of purposefully choosing incorrect answers rather than true deficits. (*Id.* at 36.) And Defendant's reading level is low average. (*Id.*) She opined Defendant does not meet the criteria for a neurocognitive disorder. (*Id.*) But she diagnosed him with narcissistic personality disorder based on his exaggeration of his accomplishments, feelings of superiority, and

attempts to construe himself in a positive light. (*Id.* at 36–37.)

Dr. Zapf, a psychologist, did not evaluate or interview Defendant, but reviewed the other experts' evaluations and collateral records. (Doc. 633-4, pp. 1–2; Doc. 633-5, pp. 1–2.) She concurs with Drs. Lloyd and Pennuto's assessment and opines Defendant is competent to stand trial. (Doc. 633-4, pp. 8–13.)

### B. Defendant's Experts

Drs. Jason Demery, Travis Snyder, Robert H. Ouaou, Valerie R. McClain, and Bushan S. Agharkar testified for Defendant and were admitted as experts without objection. (Doc. 638, p. 127:9–19; Doc. 646, pp. 200:5–14, 254:22–255:7; Doc. 648, pp. 112:14–115:6, 173:12–23.)

Dr. Demery is a neuropsychologist, who evaluated Defendant in 2018 and again on September 7, 2020. (Doc. 632-1, p. 1; Doc. 638, p. 128:1; Doc. 657, p. 1) Judge Hoffman excluded Dr. Demery's 2020 evaluation and any related testimony as untimely. (Doc. 611, pp. 3–11.) This order was affirmed. (Doc. 619.) So only Dr. Demery's 2018 evaluation was considered for this competency determination. (*See* Doc. 632-1.) Dr. Demery interviewed and evaluated Defendant, including by administering the ECST-R. (*Id.* at 1–2.) Dr. Demery opined Defendant adequately understood the nature and consequences of the proceedings against him but had an inadequate ability to assist properly in his defense. (*Id.* at 9–10.) He ultimately opined Defendant was incompetent to stand trial due to a delusional disorder. (*Id.* at 10.)

Dr. Snyder, a radiologist, reviewed various MRIs, CTs, and X-rays of Defendant's head, chest, neck, and abdomen. (Doc. 632-6, p. 1; Doc. 632-7, pp. 2–3.) He found these

abnormalities: left parietal hemorrhage (head trauma), relative cerebellar and frontal lobe hypometabolism (head trauma), abnormal progressive white matter throughout the brain (vascular dementia), a pituitary mass (endocrine dysfunction), and abnormal brain volumes (head trauma, vascular dementia, or other disorders). (Doc. 632-7, p. 2.)

Dr. Ouaou, a neuropsychologist, examined Defendant on August 28, 2020. (Doc. 632-4, p. 1; Doc. 646, p. 253:3.) Based on his battery of neuropsychological testing, he says Defendant's IQ is low average and Defendant demonstrates impairments in memory, processing speed, and executive functioning. (Doc. 632-4, p. 8.) Dr. Ouaou opines Defendant is not competent to stand trial because he cannot adequately disclose pertinent facts to his attorneys, and he lacks a rational understanding of the court process. (*Id.* at 9.)

Dr. McClain is a psychologist who interviewed Defendant on August 26, 2020. (Doc. 632-3, p. 1; Doc. 648, p. 109:8.) She found Defendant had an acceptable appreciation of the possible penalties he faced, but a marginal appreciation of the charges and a marginal ability to manifest appropriate courtroom behavior. (Doc. 632-3, p. 5.) She found Defendant had an unacceptable understanding of the legal process, capacity to disclose pertinent facts to his attorneys, and capacity to testify relevantly. (*Id.*) So overall she opined Defendant is not competent to stand trial. (*Id.*)

Dr. Agharkar, a forensic psychiatrist, interviewed Defendant on June 18 and August 27, 2020. (Doc. 632-2, p. 1; Doc. 648, p. 171:21–22.) He says Defendant has a factual awareness of the charges against him but struggles with understanding the role of witnesses. (Doc. 632-2, p. 4.) He found Defendant remains a poor historian, resulting in a

significant impairment in his ability to assist counsel. (*Id.*) And he opines Defendant could not testify relevantly because Defendant insists God will be talking through him. (*Id.*) Ultimately, Dr. Agharkar found Defendant remains incompetent. (*Id.*)

The Defense team also submitted affidavits on Defendant's competence. (Docs. 632-9, 632-10, 661-1, 661-2.) These were filed *ex parte* and under seal so the Court will not describe their contents. They are addressed in the analysis without revealing confidential information.

### C. Judge Hoffman's R&R

After reviewing the parties' briefing, expert reports, testimony, and prior competency determinations, Judge Hoffman found Defendant is suffering from a mental disease or defect—brain damage and vascular dementia. (Doc. 667, p. 59.) Noting large agreement, she determined Defendant has a *factual* understanding of the proceedings. (*Id.*) As to a *rational* understanding, Judge Hoffman credited Dr. Lloyd's opinion that Defendant has a rational understanding, given Dr. Lloyd's administration of a legal competency test and her lengthy observation of Defendant. (*Id.* at 60–66.) And Judge Hoffman found Defendant had the ability to assist in his defense, noting he could communicate with his attorneys, could be redirected to stay on topic with guidance, and understood how he could help counsel. (*Id.* at 67–74.) And based on her own observations of Defendant, she found he could comport himself appropriately in the courtroom. (*Id.* at 73.) She recommends the Court find Defendant competent to stand trial. (Doc. 667.) Defendant objects to the R&R. (Doc. 682.) With briefing complete (Docs. 697, 702), the matter is ripe.

## II. LEGAL STANDARDS

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

To be found competent to stand trial, Defendant must have: (1) "sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding"; and (2) "a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also* 18 U.S.C. § 4241(a). The parties agree the Government has the burden to prove by a preponderance of the evidence that Defendant's competency has been restored. (Doc. 612, pp. 4–7; Doc. 697, p. 5.)

## III. ANALYSIS

Defendant makes eight objections to the R&R. (Doc. 682.) Let's take each in turn.

### A. Ability to Testify

First, Defendant argues Judge Hoffman failed to consider evidence Defendant lacks the ability to testify rationally or relevantly. (Doc. 682, pp. 6–15.) But this was no error.

Under the *Dusky* standard, the defendant must have an ability to rationally consult with counsel. *See Dusky*, 362 U.S. at 402. In making this determination, courts have

considered a variety of factors. *See United States v. Derisma*, No. 2:09-cr-64-FtM-36SPC, 2011 WL 3878367, at *3 (M.D. Fla. June 27, 2011), *adopted by* 2011 WL 3878359 (M.D. Fla. Sept. 2, 2011). For a defendant suffering from amnesia, one factor is the "defendant's ability to take the stand and testify." *See United States v. Rinchack*, 820 F.2d 1557, 1569 (11th Cir. 1987). But Defendant isn't amnestic, and Defendant cites no binding authority this factor must be considered for a non-amnestic defendant. (*See* Doc. 682, pp. 13–14.) Nor does this Court find it appropriate here. This factor is helpful when the defendant's memory holds exculpatory information that can't be discovered elsewhere, the defendant's memory is lost, and the government's case is weak. *See Rinchak*, 820 F.2d at 1569–70. That isn't this case. While there's evidence Defendant may be unable to testify in an "intelligent, coherent, and relevant manner," there's evidence he still can rationally consult with counsel. *See Derisma*, 2011 WL 3878367, at *3; (Doc. 632-2, p. 4; Doc. 633-1, pp. 38–40). He tested within the normal range on the legal competency test; he understands how to help counsel; and he's followed their advice to date. (Doc. 633-1, pp. 38, 40.) So Defendant's objection is overruled.

    **B.**    **Dr. Demery's 2020 Evaluation**

Next, Defendant re-argues excluding Dr. Demery's 2020 examination was error. (Doc. 682, pp. 15–24.) Judge Hoffman excluded this examination as untimely and the order was affirmed. (Docs. 611, 619.) In their effort to re-litigate this issue the Defense faults the Court for enforcing the agreed upon schedule, with extensions, and for holding counsel to their own assurance that Dr. Demery would not be a competency witness. (*See* Doc. 611; Doc. 682, pp. 15–24.) That he was allowed to testify at all was an unwarranted

accommodation. The Court will not address this argument a third time—the objection is overruled.[1]

### C. Defense Team's Observations

Defendant argues Judge Hoffman improperly dismissed the Defense team's observations when determining whether Defendant could rationally assist in his own defense. (Doc. 682, pp. 24–30.) While Defense counsel's observations are valuable, they are not dispositive of the competency issue. *See Medina v. California*, 505 U.S. 437, 450 (1992); *United States v. Merriweather*, 921 F. Supp. 2d 1265, 1303 (N.D. Ala. 2013) (citing *Drope v. Missouri*, 420 U.S. 162, 178 n.13 (1975)).

Defendant posits Judge Hoffman dismissed counsel's observations because she could not have considered their observations while also finding Defendant able to assist counsel. (Doc. 682, pp. 24–30.) Not so. Judge Hoffman accepted the Defense team's observations as true, so far as they went. (*Id.* at 29; *see also* Doc. 667, pp. 72–73 n.59.) But their observations are not the exclusive evidence of Defendant's ability to assist counsel. Dr. Lloyd opined Defendant could rationally assist counsel based on her administration of a legal competency test. (Doc. 633-1, pp. 38, 40.) Every day, fact finding jurors are instructed that they may accept all, some, or none of a witness's testimony. Factors such as bias, motive, prejudice, and interest in the outcome are proper considerations when making credibility determinations. Defense counsel's competency assessments are

---

[1] Even if the Court accepted Dr. Demery's 2020 evaluation, it would not change the Court's conclusion because Dr. Demery did not conduct any neuropsychological or legal competency testing on Defendant in 2020. (*See* Doc. 627.)

entitled to neither more nor less consideration. Judge Hoffman did not err in finding the scales tipped in favor of competence notwithstanding the Defense team's observations. (*See* Doc. 667, pp. 68, 72–73 n.59.)

And having reviewed the Defense team's observations *de novo*, this Court agrees with Judge Hoffman's assessment. The question is whether Defendant has the *ability* to consult with counsel. *See Dusky*, 362 U.S. at 402. While the Defense team is in a unique position to observe whether Defendant has indeed assisted them, the experts are more qualified to opine on whether Defendant is *able* to assist counsel. The experts disagree on Defendant's ability. (*See, e.g.*, Doc. 632-2, p. 4; Doc. 632-3, p. 5; Doc. 633-1, p. 40.) But Dr. Lloyd was the only expert to recently administer a legal competency test;[2] and she observed Defendant over the past year. (Doc. 633-1, pp. 4–5, 38.) So the Court finds no error and overrules Defendant's objection.

### D. Defense Team's Investigations

In her R&R, Judge Hoffman notes the record contains a robust history of Defendant's life, weighing "against a finding that [Defendant's] defense team will be unable to compile evidence in this case." (Doc. 667, pp. 69–70.) Defendant objects to this portion of the R&R, arguing Judge Hoffman used this as support for finding Defendant can assist in his own defense. (Doc. 682, pp. 30–31.) "In determining whether the defendant has sufficient present ability to consult" with counsel, courts consider many factors, including "the extent to which relevant evidence could be reconstructed from

---

[2] Dr. Demery also administered the ECST-R, but in 2018. (*See* Doc. 632-1, pp. 1–2.)

communications made by the defendant to his counsel *or from independent sources*." *United States v. Giraldo*, No. 2:09-cr-85-FtM-36SPC, 2011 WL 7946037, at *3 (M.D. Fla. Oct. 24, 2011) (emphasis added), *adopted by* 2012 WL 1890508 (M.D. Fla. May 23, 2012). Judge Hoffman did not err in addressing this factor, in consideration with others. (*See* Doc. 667, pp. 67–74.)

### E. The ECST-R

Next Defendant objects to the weight Judge Hoffman gave to Dr. Lloyd based on her administration of the ECST-R, arguing she didn't address Defendant's evidence the ECST-R has limited value. (Doc. 682, pp. 31–36.) The ECST-R is a legal competency test. (Doc. 633-1, p. 38.) Dr. Lloyd administered the test to Defendant on March 2, 2020; he tested in the normal range. (*Id.*) Defendant's expert, Dr. Agharkar, testified that the ECST-R isn't good at assessing a defendant's ability to assist counsel. (Doc. 648, p. 224:2–15.) Judge Hoffman explicitly addressed this—she noted (1) "no defense expert administered any objective testing to prove this theory"; and (2) Defendant's expert, Dr. Demery, used the ECST-R in 2018 and described it as a very important tool in assessing legal competency. (Doc. 667, p. 61 n.44.) As Judge Hoffman did address Dr. Agharkar's attack on the ECST-R, the record shows experts on both sides (Dr. Demery and Dr. Lloyd) used the ECST-R at various points, and no testing was done to show the ECST-R is inadequate, Defendant's objection is overruled.

### F. Dr. Agharkar

Defendant argues Judge Hoffman arbitrarily ignored Dr. Agharkar's opinion, despite finding him credible. (Doc. 682, pp. 36–37.) He points to this footnote:

-11-

> I found Dr. Agharkar to be an extremely qualified and compelling witness, and have afforded his testimony concerning [Defendant's] diagnoses of brain damage and vascular dementia great weight. Where I afford less weight is with respect to Dr. Agharkar's conclusions that [Defendant's] cognitive deficits render him incompetent, in particular based on Dr. Agharkar's exclusive reliance on the neuropsychological testing conducted by Dr. Ouaou . . . .

(Doc. 667, p. 72 n.58.) Judge Hoffman did not ignore Dr. Agharkar's opinion. (*See id.*) And to the extent she afforded less weight to some of his opinions, the record supports this determination.

Dr. Agharkar, in part, relied on the neuropsychological testing conducted by Dr. Ouaou. (Doc. 648, p. 236:8–12.) Judge Hoffman found Dr. Ouaou inconsistent and biased for the Defense. (Doc. 667, pp. 64–66.) While Dr. Agharkar relied on multiple sources, including his own interviews, to assess Defendant's competency, he relied in part on a source Judge Hoffman found not reliable. (*See* Doc. 632-2, pp. 1–2; Doc. 648, p. 236:8–12; Doc. 667, pp. 64–66.) It was not clearly erroneous to afford less weight to Dr. Agharkar's opinion because he relied on an unreliable source.

### G.     Dr. Lloyd

Judge Hoffman gave greater weight to Dr. Lloyd's opinion, partially because Dr. Lloyd "was in the unique position to observe [Defendant] over the course of a continuous 12-month period . . . ." (Doc. 667, p. 62.) Defendant argues this was error because there's no evidence Dr. Lloyd spent more time observing Defendant than the Defense experts. (Doc. 682, pp. 37–40.) But Judge Hoffman was not comparing hours between the experts. Rather, she acknowledged Dr. Lloyd's recent observation of Defendant over an entire continual year. (Doc. 667, p. 62.) While some Defense experts have seen Defendant

periodically from 2017 to 2020, Dr. Lloyd observed Defendant more continuously. (*See* Doc. 632-1, p. 1; Doc. 632-2, p. 1; Doc. 633-1, pp. 4–5.) It was not clear error for Judge Hoffman to give weight to this fact.

### H.    Brain Damage

Last, Defendant argues Judge Hoffman improperly credited the Government's experts, despite their rejection of Defendant's brain damage. (Doc. 682, pp. 40–43.) In their report, Drs. Lloyd and Pennuto did not find Defendant had brain damage. (*See* Doc. 633-1.) But they didn't see all Defendant's brain scans—they lacked the correct software to view them. (*See* Doc. 648, p. 250:7–20.) Defendant says failing to ask for help reading these scans is incontrovertible evidence Drs. Lloyd and Pennuto are not credible experts. (Doc. 682, p. 41.) But as Dr. Snyder explained, the brain scans don't identify Defendant's functional deficits. (*See* Doc. 646, p. 244:6–15.) From the structural damage, Dr. Snyder would expect to see some functional deficits, but he can only guess at what level. (*Id.* at 245:16–24.) While perhaps Drs. Lloyd and Pennuto should have arranged to view the scans, they conducted neuropsychological evaluations and forensic assessments to determine Defendant's functioning. (Doc. 633-1, pp. 32–40.) This methodology is consistent with their expertise in assessing function, not structural damage of the brain. (*See id.*; Doc. 638, p. 72:6–13.) As the competency determination turns on Defendant's functioning, Judge Hoffman did not err in crediting their opinions. *See Watts v. Singletary*, 87 F.3d 1282, 1286 (11th Cir. 1996). So Defendant's objection is overruled.

Most, if not all, of Defendant's objections go to Judge Hoffman's weighing of the evidence. (*See* Doc. 682.) But crediting one expert over the other is not arbitrary or clearly

erroneous if the record evidence supports the determination. *See Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005). The record supports Judge Hoffman's finding. And having reviewed the evidence *de novo*, the Undersigned also finds Dr. Lloyd's opinion the most critical to the competency determination based on her administration of the ECST-R and her observations of Defendant over an entire year. (*See* Doc. 633-1.) So Defendant's Objections are overruled. (*See* Doc. 682.) The Court adopts Judge Hoffman's R&R and finds Defendant competent to stand trial.

### IV.  A FINAL NOTE ON ADVOCACY

Counsel tasked with the representation of a defendant charged with a capital crime shoulders an unenviable burden. The knowledge that from the crucible of their effort flows not just the prospect of exoneration, but potentially life itself, is a yoke too heavy for all but the most fit and well equipped. And so, it has been said that "death is different." *Gregg v. Georgia*, 428 U.S. 153, 188 (1976). And so it is.

But principles of advocacy and professionalism remain constant. Throughout their filings in this case, but especially here, the Defense legal arguments seem to have lost touch with the ultimate goal of persuasion and become a cathartic exercise for counsel to vent frustration by deployment of sarcasm, ridicule, incredulity and disrespect that ill serves the goal of persuasive legal argument. Raising the hyperbolic volume with "pop up adverbs" describing the R&R as "utterly" unreliable or the magistrate judge "inexplicably" factoring considerations in her opinion; "mystifyingly" relying on certain facts; "utterly" failing to undertake review; "irrationally" ignoring expert opinions and

"concocting"³ a length of time argument may liberate the frustrations of the author but, in reality, reflect weakness rather than strength of position. (*See* Doc. 682, pp. 4, 30, 35, 36, 38 n.15.) Counsel doth protest too much, methinks. WILLIAM SHAKESPEARE, HAMLET act 3, sc. 2. And it does not serve them well.

## V.   CONCLUSION

It is **ORDERED AND ADJUDGED**:

1. Defendant's Objections to the Magistrate Judge's Report and Recommendation (Doc. 682) are **OVERRULED**.

2. U.S. Magistrate Judge Leslie R. Hoffman's Report and Recommendation (Doc. 667) is **ADOPTED, CONFIRMED** and made part of this Order.

3. Defendant is **COMPETENT** to stand trial.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 23, 2020.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record

---

³ Actually a transition verb, but illustrative of the point.